IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

THOMAS JAMES ROGERS
3655 W. ANTHEM WAY
SUITE A-109 PMB 266
ANTHEM, AZ 85086
TEL: (702)817-1066

    Plaintiff,
    Pro Se
V.

RTX CORP
1151 E. Hermanns Rd.
Tucson, AZ 85756
(520)794-8313

a.k.a.'s; RTX, RAYTHEON
RAYTHEON TECHNOLOGIES
RAYTHEON MISSILE SYSTEMS

    Defendant,

COMPLAINT NO: CV24-00519-TUC-AMM

COMPLAINT

### PLAINTIFF'S ORIGINAL COMPLAINT, JURY DEMAND AND MOTION

Come now, the Plaintiff Thomas James Rogers (herein after "Rogers") makes the following allegations against Defendant RTX CORP, a.k.a.'s RTX, Raytheon, Raytheon Technologies and Raytheon Missile Systems (herein after "RTX".

### NATURE OF ACTION(S)

### COUNT 1

    Willful and intentional gross negligence causing an accident upon Rogers with injuries on RTX's property. Three direct managers testified under oath in Rogers AZICA hearing of not knowing a forklift was broken and parked in a hazardous location with its forks laying in a known frequently traveled area. Rogers called upon the forklift driver who stated the opposite knowing this forklift was broken and in a dangerous position to injure someone. Christensen ordered maintenance to install and repair existing lighting after Rogers injuries accident, then submitted to OSHA and AZICA the falsified condition he staged (which were not present at the time of Rogers accident;

- 1 -

### COUNT 2

Misrepresentation by RTX's original offer for employment to Rogers of their written duty to uphold and enforce their own employment, ethical, and safety rules / policies in the event Rogers files a complaint(s), and their gross failures to follow the rules and policies presented to Rogers who relied on them in his decision to accept employment for RTX. RTX created the rules and Rogers accepted the job offer based upon their supposed commitment of not tolerating workplace bullying, harassment, intimidation, retaliation, age and sex discrimination and a safe work environment;

### COUNT 3

Failure to provide a safe work environment (violation of OSH Act) for Rogers (disregarded OSHA Standards and filed a falsified / staged response to OSHA / ADOSH and the Arizona Industrial Commission/AZICA after Rogers filed complaints);

### COUNT 4

Directed age discrimination against Rogers in violation of EEOC Age Discrimination in Employment Act (ADEA) of 1967;

### COUNT 5

Directed sex discrimination against Rogers in violation of Title VII of the Civil Rights Act of 1964 (Title VII);

### COUNT 6

6.   Retaliated against Rogers after he notified RTX management of his filing EEOC (and internal ETHICS / HR) complaints (violations of EEOC / ADEA of 1967).

### COUNT 7

7.   Allowed and encouraged management to create a hostile work environment by bullying, harassment, intimidation, age and sex discrimination. (all EEOC law violations).

### SUPPORTING RIGHT TO SUE LETTER

The Plaintiff attaches his EEOC Right to Sue letter to this Complaint.

### JURISDICTION

This court has subject matter jurisdiction over the claims presented herein pursuant to the laws of the U.S. Congress, including but not limited to:

1.   EEOC Age Discrimination in Employment Act (ADEA) of 1967;

2.   Title VII of the Civil Rights Act of 1964;

3. OSHA / OSH Act.

## PARTIES

A. Plaintiff

1. Rogers is a 65 year old Caucasian male resident of Anthem Arizona

2. Rogers was employed by RTX within the Commonwealth of New Mexico from May 15, 2017 to September 2019), and then the Commonwealth of Arizona from September 2019 to September 2023

B. Defendant.

1. RTX is a for-profit business entity with its principle office located in Pima County, City of Tucson, Arizona.

2. RTX is an awarded bid proposal contractor for the U.S. Government, specifically the Department of Defense.

3. RTX was Rogers' employer as the term "employer" is defined by the defendant's Employee offer letter and Employee Handbook.

4. RTX may be served at the address of 1151 E. Hermanns Road Tucson AZ 85756, or, wherever an appropriate agent for the Defendant may be found;

5. Whenever in this Complaint it is alleged that RTX committed any act or omission, it is meant that RTX's Officers, Directors, Vice-principals, Agents, Servants, Regional Managers, or Employees committed such at or omission and that at this time such act or omission was committed, it was done with the full authorization, ratification, or approval of RTS or was done in the routine and normal course and scope of employment of RTX's Officers, Directors, Vice-Principals, Agents, Servants, Regional Managers, or Employees.

## INTRODUCTION

1. RTX is a contractor for the U.S. Governments Department of Defense as defined in Title 32 of the Code of Federal Regulations (C.F.R.'s), with performance based on the Federal Acquisition regulations and compliance of said regulations.

2. RTX's responsibilities as a contractor are marginally comparable as an actual U.S. Government employee by following the same laws rules, policies and procedures as noted in this complaint, while working on any and all U.S. Government Facilities including the RTX Tucson Airport Facility.

3. RTX will not dispute the fact that employment laws have been in their possession prior to Rogers employment period for them.

4.  RTX offered an employment letter to Rogers in May of 2017. The offer letter stated that Rogers employment will begin at the White Sands Missile Range, NM. (herein after WSMR). This facility is located within a U.S. Army Base and therefore owned by the U.S. Government.

5.  RTX mailed employment documents to Rogers after his acceptance of their employment offer letter, including policies, rules and procedures, and states that Rogers is responsible for reading, understanding and complying with these company Rules and Policies.

6.  Rogers was required during the course of his employment from May 2017 through September 2023, to take yearly compliance courses of the RTX Policies, Rules and Procedures. These RTX training courses would include but not limited to, countless Ethics, Code of Conduct, ITAR and EXIM Import / Export Policies. RTX is in possession of Rogers employee files which show his completion of said 7 consecutive yearly polices, ranging within the hundreds.

7.  RTX emphatically pushed these said rules, including Complaints filed, investigative procedures, and the duties of the employer and employee from the time the complaint(s) are filed, to the investigation(s) (alleged investigations), and then directive actions of RTX Ethics and HR against the accused.

8.  It is clearly written within RTX's own Policies and Rules with regard to Conduct and "Code of Conduct", and compliance by ALL employees, which would include;

   a.  Retaliation and harassment is strictly forbidden and will not be tolerated in any form by one employee against another.

   b.  Business Ethics and Conduct

   c.  Workplace Safety and compliance with all written government and RTX laws and Policies, including OSHA / ADOSH.

   d.  Compliance with all Equal Employment Opportunity Commission Laws

## EMPLOYMENT PERIOD INCIDENTS

1.  Rogers was originally hired by RTX (then known as Raytheon IDS) May of 2017 at the WSMR site. Rogers was asked to attend Locksmith training and was given the job duties to maintain, and upgrade all security locks and safes under RTX's control within the WSMR Site. This involved working with a co-worker responsible for the facilities upkeep. Rogers was being bullied and harassed by a "known" offender, Mr. Frank Balderama, Facilities Manager (Herein after Balderama). Rogers states "known" because many co-workers almost immediately after his hire had stated to him to "watch out" for Balderama, he's a trouble maker. Rogers filed an HR and Ethics complaint, of which was ignored. Rogers felt his well being was in jeopardy due to RTX's negligence and was forced to seek employment outside of WSMR. This involved relocating from New Mexico to Arizona, and Rogers was desperate to get out of the hostile work environment created and knowingly accepted by RTX and all management. Rogers applied for and immediately received a job offer from the RTX Tucson Facility working in the 805 Low Voltage and Power Lab.

2.  Rogers duties at the Tucson 805 lab included supporting all engineers fabrication and rework requests for electrical and mechanical design builds. Approximately 6 months after Rogers began employment at RTX's Tucson facility, a new co-worker was hired approximately March of 2020. The co-worker was approximately a 25 year old Hispanic female named Valerie Braccamonte. About one month had passed when Rogers was called outside of the closed (secured) lab in to the hall where his Manager, Mr. Sonny Parks, and another manager Mr. Gilbert Borboa, had purchased 3 (birthday) cakes for Ms. Bracamonte. Rogers was startled to see this for his birthday date (1/19/1959) was asked by Mr. Parks shortly after his hire, yet he did not receive an event on his birthday just several months prior was given to Braccamonte. At the end of the year, Rogers noticed that Bracamone received her performance development review / raise before his, and heard that she had received a

substantially higher raise than his. Rogers filed an Ethics complaint, and unlike his complaint at WSMR, the complaint was (supposedly) investigated, where he received a follow up call from HR saying they did not find any unethical behavior or discrimination. Rogers decided to transfer, again, to another department where his outstanding skills, knowledge and workmanship was highly sought out throughout RTX's facilities and that he would work for a management who sees them and rewards him with raises to justify his hard work.

3. Rogers, again, applied for an internal job posting, and was, again immediately contacted, and an interview set up to talk with him. Four RTX managers visited Rogers while he was still at the 801 LVOP Lab, Mr. Matt Christensen, Mrs. Rondy Dupre, Mr. Sergio Gonzales, and another employee who Rogers does not recall her last name, only her first name is Starr. Rogers began employment November 2021 at the RTX "Bike Shop", located at 6880 S. Tucson, Blvd. Tucson, AZ 85756. Mrs. Dupre (herein after "Dupre"), (Dupre is a 35 year old Caucasian married female) was Rogers direct supervisor during the course of his employment at this location.

Shortly after Rogers transfer he noticed his work area being out of place, items that were in a certain location prior to leaving one day, ending up in a different location the next morning. Rogers was then approached by a co-worker, Ms. Cricket Trieber (herein after "Trieber") then stated to Rogers that several other technicians were going to his work station, examining his work, then critiqued it to Dupre. This was going on for at least a month until Rogers finally decided to ask for a meeting with Dupre, and Matt Christensen (herein after "Christensen"). (Rogers stated that he found out that co-workers were waiting until her left for the day, then they would go through his work and criticize it. Rogers told Christensen that one "snooping" co-worker, David Gonzalez (herein after "Gonzales") would run to the front office and tell Dupre that Rogers was not conforming to their style of work methods (Gonzales is a 35 year old Hispanic single male). Rogers stated his displeasure of being looked over as he worked, and his work being spied on by co-workers when he leaves for the day.

During Rogers course of employment with RTX at the Bike Shop location and under Dupres supervision, Rogers (and other employees) noticed unethical conduct and behavior between Dupre and Gonzales. Rogers and others witnessed Gonzales receive a telephone call in 2021/2022 from Dupre who was driving to work. Dupre's car sustained a flat, so Gonzales stood up, announced to co-workers he's leaving to help Dupre. Gonzales left the RTX facility, on the company time, helped Dupre with the flat tire, then returned to work. Gonzales did not change his timecard to reflect the loss of work, and, Dupre approved his timecard for his falsified timecard submitted.

Rogers, and co-workers again witnessed a second unethical conduct incident between Dupre and Gonzales. It was several months after Dupre's flat tire incident where Gonzales was literally on the telephone with Dupre as she was driving to work when she was distracted and had a rear end accident. Gonzales, again, left the facility, on company time, and submitted yet another falsified timecard of which was knowingly approved by Dupre.

## DUPRE / GONZALES EMPLOYMENT HISTORY AT RTX

Gonzales has a history within RTX where he had worked for them under Dupre from approximately 2017 until 2020. Gonzales was unhappy with his pay, and wanted to be promoted by Dupre to a "lead" position. Gonzales chose to leave RTX for a less than favorable technician at a Tucson company called "Scorpion". At that time, a Mr. David Conrad (herein after "Conrad") was the "lead", and it is known through co-workers that Conrad and Dupre did not see eye to eye (Conrad is a 60 year old Caucasian male). It was also known by co-workers that Gonzales did not get along with Conrad.

Conrad eventually could not take the hostile work environment created by Dupre, and resigned / retired. (this was after Gonzales resigned from RTX to work for Scorpion). Almost immediately Dupre reached out to Gonzales, in need of a replacement technician after Conrad's departure and much relied upon knowledge and experience. Dupre asked Gonzales to meet her at a local bar. There were several co-workers present during this meeting between Dupre and Gonzales, including Gina Barnett, Cathy Mench, and several other employees who witnessed Dupre sit with Gonzales, and offer him a job back with RTX. It is unknown if Dupre opened up an RTX job candidate position for Conrad's position, or if she posted it on a job site as Indeed or any other job searching site (as is legally required by EEOC employment laws to get other potential well qualified candidates).

Rogers intends on requesting a subpoena for Barnett, Bennett, Herrera's, Conrad, and several other former witnesses to testify to these factual allegations.

Dupre managed to get RTX to re-hire Gonzales approximately in late 2021 / early 2022 after a bar meeting, bridged his prior employment time as if he never left RTX, and promised to advance him if he returned.

## DUPRE'S ACTS OF COMMITING AGE DISCRIMINATION

Dupre had written not one, but two Performance Development Reviews for Rogers, one in 2022 and another in 2023. Dupre both verbally and in written form stated that she was going to help "advance" Rogers in to a higher position and pay grade, yet it never occurred.

Dupre created a new position in September 12 of 2022, referred to as an Engineering Prototyping Fabrication Inspector
Rogers was informed of this "newly created" position, not by Dupre, but by a former co-worker Mr. Patrick Bennett (herein after "Bennett"). Rogers was not interested in applying to this new position for three reasons;

Dupre created the new position for Gonzales, and ignored promoting Rogers even though she stated and had written otherwise prior to Gonzales.

1. The position Dupre created was a T5 position (Rogers was already a T5);

2. The position requires that you take an inspection certification course (Rogers had already taken and held the Inspection Certification Course when he had transferred within RTX from WSMR to Tucson (2019);

3. All technicians working in the Bike Shop Electrical Lab under Dupre are required to take and maintain the Inspection Certification Course. At the time of this posting, every single co-worker including Rogers, were certified Inspectors.

It was clearly evident that Dupre created this position solely for the purpose to advance the much younger than Rogers employee "Gonzales" from a T4 pay grade to Rogers T5 pay grade. Rogers asked Bennett if he was going to apply for it and Bennett's response was "what's the point, it's for Gonzales".

Rogers then confronted Dupre on the early morning of 9/13/2022, and said "I see you created a T5 position". Dupre's response was a startled "deer in the headlights", hoping that she would be able to sneak the position under the radar of all her other qualified employees so that Gonzales would be the only "internal RTX employee", then Dupre would dismiss any other outside applicants.

Dupre's response to Rogers inquiry was "Oh, how'd you hear about it".

Rogers than approached three other co-workers, Treiber, Mr. Marcos Herrera's and Mr. Jowie Aebecede (herein after Marcos and Aebecede), where all three were T4 pay grade positions. Rogers asked them to apply, and unfortunately their responses were the same as Bennetts.

Several employees did apply for Dupre's newly titled and higher pay grade position, including Mr. Joseph Sharpe, a seasoned employee with many more years of experience than Gonzales. Mr. Sharpe even held a degree where Gonzales did not. Mr. Sharpe was rejected to his application for the new position even though he had all of the qualifications, including an "Inspector Certificate".

Another interesting and clearly evident action Dupre did after Rogers confronted her over the newly created position which all co-workers found out about, was she approached Christensen, and was told to create yet another "newly titled" T5 position so that co-workers who were upset that Gonzales was going to be chosen for the first new job, would have an opportunity to apply and hopefully get it. Sharpe, the more experienced T4 technician applied, and because Dupre did not like him, he was rejected yet again.

Rogers was promised several times by Dupre (well before her creation of a new T5 job position) to advance him to the higher pay grade due to his extensive experience and knowledge in all fields of Engineering fabrications, particularly Rogers vast knowledge in electronic circuit board rework.

> Dupre, as other past supervisors of Rogers, all asked and expected Rogers to train and teach the younger technicians his skills.

## ROGERS CONFRONTATION WITH DUPRE LEADING UP TO RETALIATION

Approximately mid to late February 2023, Rogers received his 2022 PDR by Dupre. The review was written commending Rogers on his excellent work and outstanding contributions, including, again advancing him in his career and pay grade. Even though Rogers received an excellent write up, his reward / pay raise was less than one dollar.

Rogers then stated to Dupre his unhappiness of not getting a fair raise, and her actions of not promoting him as she said. Rogers then told Dupre "You have a lot of nerve to create a new position for Gonzales when all he does is come to work late and leave early and still charge 8 hours", and "you created the new position for Gonzales, yet the inspection rack was full of work that he intentionally ignored knowing that it will be inspected by Mrs. Carol Mack". Rogers also stated to her of his observations of Dupre and Gonzales committing timecard fraud from the two incidents of a flat tire and car accident, and that Rogers was calling HR, Ethics, and immediately filing an EEOC complaint.

Rogers then stood up and said "are we finished", and walked out of his PDR returning to his work station.

Herraras was the next to be called in to his PDR, and when he returned he leaned across to work station separating Rogers and Herraras, and whispered "what did you say to her, she was in tears".

## ROGERS EMPLOYMENT HISTORY FACTS AT RTX

1. Rogers received 6 consecutively excellent Performance Development Reviews (herein after PDR) by numerous RTX management employees from May 2017-through September 2023.

2. In Rogers February 2023 PDR, he was referred to as a Subject Matter Expert (herein after SME), by Dupre;

3. Rogers received over 30 RTX RSTAR and ACHIEVEMENT AWARDS during his employment from 5/15/2017 through 9/31/2023. The awards were given to Rogers for going above and beyond his job including Collaboration, Accountability, and other areas to help hundreds of engineers he performed work for to meet their programs schedules and deadlines.

4. Rogers had an excellent employee file within RTX HR files up to his transfer and subsequent reporting (as is asked to do by RTX mandatory training) of unethical conduct between Dupre and Gonzales.

5.   Rogers was asked of each position / job title and department, to train less experienced co-workers. Most all of these co-workers had no idea how to perform tasks where Rogers gained this knowledge from years of experience.

## DUPRES FIRST ACT OF RETALIATION

It came as no surprise to Rogers to then receive a negatively written email from Dupre less than two weeks after Rogers's confrontation with Dupre. In this email, Dupre attacked Rogers experience and knowledge as a form to stop any further possibility of advancing Rogers as she had promised prior.

Rogers has kept every single email from RTX, the incidents, policies and procedures, and written evidence intending to present to this court to support every single facet of accusations stated.

After receipt of Dupres email start of a retaliation, Rogers responded to Dupre with a harsh response in defense of his experience and knowl

## DUPRES SECOND ACT OF RETALIATION

Several weeks had passed since Rogers written response to Dupre occurred. Rogers arrived at work March $5^{th\ 2023}$ and received an email meeting invitation from Dupre, of which included the participants Christensen (Dupres manager), and an HR representative Mr. Cameron Mulder.

Rogers then sustained injuries on the job the next day 3/6/2023 from operating a manual drill as he fabricated an electronic enclosure that required 150 precise holes. Dupre cancelled the meeting and waited until Rogers returned to work over 3 months later (Rogers required numerous surgeries to correct severe tendonitis, carpal tunnel and ulna nerve repairs.).

Rogers returned to work July 15th, 2023. Where Dupre then initiated the HR / Manager / Dupre meeting. In this meeting Rogers carried a personal recording device to capture the statements made in this meeting (several of Dupres responses to Rogers's examination of her and Christensen and during Rogers ICA hearing do not reflect what was actually said in the meeting that Rogers recorded). Arizona law allows recording events which all participants present including myself, are present.

In the meeting, Dupre accused Rogers of insubordination. She used an incident from many months prior (even before Rogers last 202 PDR Review conducted in February 2023). Rogers has written emails showing that he had not refused to follow her instructions, and in the meeting, Christensen and Mulder both did not state that I was insubordinate, Christensen stated "well Thom, moving forward we just want to make clear that you understand the obligations of your position".

Rogers was aware of Dupres retaliation attempt in advance, and on July 24th, the day of the above stated meeting, Rogers sent an email to Dupre asking what the meeting was in regards to. He then submitted his resignation as August 30th, 2023. Interestingly enough, and cause for questioning, Dupre, Christensen, and Mulder still continued with the meeting where Dupre accused Rogers of Insubordination.

Following the meeting, Mulder asked Rogers to call him privately to discuss his termination. Rogers stepped out of the building and immediately called Mulder back where he offered Rogers Paid Leave through August 30th, 2023, if Rogers were to gather up his belongings and leave July 25th, 2023. Rogers asked Mulder to give him time to check with a legal advisor before he accepted the offer.

## CHRISTENSENS ACT OF DISCRIMINATION

Rogers sent Christensen an email July 24th after leaving RTX. In this email, Rogers told Christensen that he will look forward to the "going away party" which Christensen had held in the past for many other former employees who resigned or transferred. Rogers has copies of going away emails which Christensen had previously sent out to others including Rogers, and has retained them to show the preferential and partial treatment Christensen, Dupre, Parks, and Borboa, all managers for RTX continually behave under RTX's Code of Conduct and Ethics.

Rogers then organized a going away party of his own after departing RTX, and the following day he reached out to all his former co-workers and engineers who he helped over the years. Rogers invited them to a gathering the next Friday, and Rogers was receiving few responses to his email invitation. Rogers then received al call from Mack stating the Dupre saw my invitation, then, organized her own "Friday Happy Hour". This action clearly shows the disgusting behavior allowed by RTX as a whole.

      RTX allowed Dupre to create a hostile work environment, and continue to bully, harass, intimidate employees over a 10 year period. Dupre used the tactic of "paper trailing" an employee. This is where she creates a false accusation against an employee, enters it in to the HR records, then confronts an employee with the false accusations. The following is a list of "Known" employee victims both current, former, and retired:

    1. Mr. David Nessler
A 60 year old former employee who was harrassed, badgered, bullied, demoted, transferred, and then committed suicide shortly after;

    2. Mr. David Conrad
a 60 year old former employee under Dupre who was harassed, badgered, bullied to the point of taking early retirement;

    3. Mr. Roger McIntire
a 60 year old former employee under Dupre who was harassed, badgered, bullied to the point of taking early retirement);

    4. Mr. Adrian Bell
Unknown age, resigned from subject to Dupres hostile work environment

    5. Mrs. Carol Mack
Mrs. Dupre began a "paper trail" on Mack, age approximately 60, a 35 year employee, Dupre bullied, intimidated her using her job position of "Lead" as leverage to harass. Mack witnessed the continual hostile work environment, including knowledge of Nessler suicide after Dupre bullied him.

    6. Sharon Brillhart
Brillhart was a 60 year old now retired employee who Dupre harassed, badgered, bullied to the point of taking early retirement);

    7. Cathy Mench
Mench is a 60 year old employee who Dupre "paper trailed", bullied harassed, and intimidated then transferred her out of her area as she had done to Nessler.

    8. Gina Barnett
Barnett is a middle aged former employee who, as Rogers, filed Ethics complaints against Dupre. Dupre in turn began a "paper trail" on Barnett, bullied, intimidated and harassed Barnett where she eventually resigned.

      Rogers has contacted these witnesses (living), and has the full support of their testimony at trial to corroborate Rogers accusations of Dupres (allowed and never ending) behaviors written in this Complaint.

RTX WRITTEN RESPONSE TO EEOC

1. RTX responded to the EEOC complaint by calling Rogers "a know it all" (it went from Rogers PDR much needed Subject Matter Expert (SME), to defamation / name calling;

2. Not one witness who Rogers submitted to the EEOC were interviewed and investigated;

3. RTX claims that Rogers previous ethics COMPLAINTS, were fully investigated, and attempted to paint a picture of the Plaintiff as a "complainer". However, Rogers has text messages from many former co-workers whom he submitted to RTX Ethics and HR to investigate / interview the unethical accusations, the response texts state " they were never contacted'. A "thorough" investigation questioning all who witnessed the incidents, where RTX only talked to the accused.

Wherefore,

The Plaintiff respectfully requests that this court enter a judgment awarding Plaintiff:

1. Compensatory Damages

The Plaintiff has suffered enormous emotional distress from the Defendants actions of Grossly and Negligently ignoring a health hazard causing injuries to the Plaintiff. The AZICA ruling denied Plaintiffs workers Compensation Coverage not because the accident (not witnessed) did not occur, but because the plaintiff had opportunity to report his accident injuries in a timely manner. The plaintiff wanted to free himself from the hostile work environment and mental anguish before reporting the accident. To OSHA. The Plaintiff incurred medical expenses following the accident and demands repayment of those expenses.

The Plaintiff therefore demands that this Court enter a judgment of $250,000.00 compensatory damages.

2. Punitive Damages

The Plaintiff demands that this Court enter a judgment of $25,000,000.00 punitive damages to deter this out of control with no leadership DoD contractor from ever allowing another employee to conduct discrimination, retaliation, harassment bullying and intimidation tactics towards RTX employees by their managers who are required to take the same training as them.

JURY DEMAND

The Plaintiff demands a trial by jury on all counts stated within this Complaint.

Respectfully submitted this 24th day of October, 2024

By                                    Signed _____

Thomas James Rogers
3655 W. Anthem Way
Suite a-109 PMB 266
Anthem, AZ  85086
Tel; (702) 817-1066
thomjrogers@tminusproductions.com

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)
Issued On: 7/24/2024

To:  Thomas J. Rogers
     3655 W. Anthem Way, Suite A-108 Pmb 266
     Anthem, AZ 85086

Thomas J. Rogers v Raytheon Company/ Raytheon Missile Systems
EEOC Charge No: 35A-2023-00409

EEOC Representative and email:   Robin Campbell
                                 State, Local & Tribal Program Manager
                                 robin.campbell@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo
District Director

CC:
Jill Taylor
Seyfarth Shaw LLP
233 W Wacker Drive, Suite 8000
Chicago, IL 60606

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.